**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL ELLIOTT,** | ) | |
| | ) | **Case No.:**_____ |
| **Plaintiff,** | ) | |
| **v.** | ) | **JUDGE:**_____ |
| | ) | |
| **3M COMPANY** | ) | **MAGISTRATE JUDGE:**_____ |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

NOW COMES the Plaintiff, MICHAEL ELLIOTT, ("Plaintiff" and/or "ELLIOTT") by and through his undersigned counsel of record, upon personal knowledge as to those allegations in which he possesses and upon information and belief as to all other matters, complains against Defendant 3M COMPANY, (hereinafter referred to as "Defendant" and/or "3M"), and in doing so states as follows:

**INTRODUCTION**

1.      Plaintiff, Michael Elliott, is a hardworking, qualified, disabled former employee of Defendant 3M that was discriminated against, and terminated, by Defendant 3M, because of his disabilities in violation of the Americans with Disabilities Act of 1990, §2 *et. seq.*, 42 U.S.C.A. §12101, *et. seq.* ("ADA").

2.      Plaintiff Elliott has suffered severe damages as a direct and proximate result of the discrimination against him on the basis of his disabilities and his unlawful termination from employment. Plaintiff Elliott brings this lawsuit, seeking equitable and monetary damages, for Defendant 3M's unlawful disability discrimination, failure to accommodate, failure to engage in

1

an interactive process to determine if reasonable accommodations could be made to the known disabilities of Plaintiff and unlawful termination.

**PARTIES**

**a.    Plaintiff**

3.    Plaintiff, Michael Elliott, is a resident of Kane County, Illinois who currently resides at 1371 Durham Drive, Aurora, Illinois 60506.

**b.    Defendant**

4.    Defendant, 3M COMPANY ("3M") is a corporation incorporated under the laws of the State of Delaware. At all times relevant to this Complaint, 3M transacted business throughout the State of Illinois and in this District and employed Elliott within this District.

5.    Defendant 3M is engaged in an industry affecting commerce and employs more than fifteen (15) employees and is a covered entity within the meaning of the ADA, 42 U.S.C. § 12111.

**JURISDICTION AND VENUE**

6.    The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332, 1343(3) and (4), 1658, 2201, and 2202. This is a suit authorized and instituted pursuant to the Act of Congress known as the "Americans with Disabilities Act of 1990," §2 *et. seq.*, 42 U.S.C.A. §12101, *et. seq.*

7.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b), in that 3M employed Elliott in the Northern District, Elliott resides in the Northern District, and all or a substantial part of the events or omissions giving rise to the claims occurred within the Northern District.

2

## PROCEDURAL HISTORY

8.      Elliott filed a "Charge of Discrimination" with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC") on or about April 18, 2008, alleging violations of the Americans with Disabilities Act of 1990, §2000 *et. seq.*, and the Illinois Human Rights Act, 775 ILCS 5/2-101 *et. seq. See April 18, 2008, Charge of Discrimination attached hereto as "Exhibit A".*

9.      The EEOC issued a "Notice of Right to Sue" dated March 31, 2010. *See March 31, 2010, Notice of Right to Sue, attached hereto as "Exhibit B".*

10.     Elliott has timely filed this lawsuit within ninety (90) days from the date of the March 31, 2010, Notice of Right to Sue.

11.     Elliott fulfilled all conditions precedent to the institution of this action under the ADA.

## COMMON ALLEGATIONS

12.     Plaintiff Elliott began his employment with 3M on or about September 8, 1997.

13.     Plaintiff Elliott was employed by 3M as a Lead Operator in the receiving department, for eight (8) years prior to his unlawful termination in violation of the ADA.

14.     Plaintiff Elliott is disabled within the meaning of the ADA.

15.     Plaintiff Elliott suffers from the physical and mental impairments of depression, anxiety, ulcers and severe migraine headaches which substantially limit major life activities. Plaintiff Elliott has a record of his disabilities and receives ongoing and continuous medical treatment for said disabilities.

16.     Plaintiff Elliott's disabilities (depression, anxiety and migraine headaches) substantially limit one or more of his major life activities, including, but not limited to, walking, standing, sleeping, concentrating, thinking, seeing, reading and communicating.

17.     Plaintiff Elliott's ulcers substantially limit one or more of his major life activities, including, but not limited to, eating, sleeping, concentrating, thinking, reading and communicating.

18.     During all relevant times herein, 3M was a covered entity as defined by the ADA.

19.     At all relevant times herein, Plaintiff Elliott informed 3M of the nature and scope of his disabilities and 3M was aware of Plaintiff's disabilities.

20.     Elliott was an outstanding employee of 3M that made substantial contributions to 3M's operations, and during all relevant times performed his job responsibilities in a manner that met or exceeded 3M's legitimate business expectations.

21.     Plaintiff had an outstanding work history and was never subjected to meaningful disciplinary action during his employment with Defendant. Plaintiff was an excellent, qualified, and dedicated employee.

22.     Plaintiff was a qualified individual with a disability that is capable of performing the essential functions of his job with reasonable accommodations.

23.     In August 2007, Plaintiff Elliott's doctors prescribed a new treatment plan for his depression, anxiety, ulcers and migraine headaches.  Plaintiff Elliott was put on several new medications simultaneously and his doctors determined that he could continue to work on these medications, however he would have a temporary driving restriction during the first weeks of the new treatment.

4

24.     Elliott immediately advised 3M of the treatment plan, new medications and temporary driving restriction.

25.     Elliott requested a reasonable accommodation of a temporary transfer to an open position and/or assignment that did not require driving.  Plaintiff was aware of and suggested several open positions and/or assignments that would accommodate Plaintiff Elliott's disabilities and temporary restrictions.

26.     Transfer to an open position that did not require any driving was a reasonable accommodation.

27.     Alternatively, Plaintiff Elliott suggested accommodating his disability by temporarily assigning him job duties that did not require driving.  Defendant 3M had more than sufficient job duties that did not require driving that it could have reasonably accommodated Plaintiff Elliott's request.

28.     3M rejected all of Elliott's proposed reasonable accommodations, and further simply refused to engage in an interactive process to determine whether any reasonable accommodation could be made.

29.     Defendant 3M was aware of Elliott's disabilities and need for reasonable accommodations, but ignored and refused its mandatory obligation under the ADA to engage in an interactive process with Plaintiff Elliott to identify and implement appropriate reasonable accommodations, including but not limited to:

        a.     Defendant 3M failed to consult with Elliott to ascertain his job-related limitations and how a reasonable accommodation could overcome those limitations;

b. Defendant 3M refused to identify potential accommodations and assess their effectiveness in enabling Plaintiff Elliott to perform the essential functions of his job;

c. Defendant 3M did not engage any consultants or experts to evaluate and determine whether Plaintiff Elliott was disabled, whether Plaintiff Elliott had job-related limitations, and/or whether a reasonable accommodation could be made;

d. Defendant 3M refused to consider Plaintiff Elliott's preference and select and implement the accommodation most appropriate for both Plaintiff Elliott and 3M; and

e. Defendant 3M refused to consider or offer any accommodations, despite the ability to provide reasonable accommodations, but rather told Elliott he could not work at all until he could return to work without restrictions.

30. In October 2007, when Elliott was cleared by his doctors to return to work with no restrictions, Defendant 3M told Elliott that his position had been filled and that there was no position for him at Defendant 3M.

31. Defendant filled Plaintiff Elliott's position with a non-disabled individual.

32. Despite numerous open positions, of which Plaintiff Elliott was qualified and competent to fill, Defendant 3M refused to place Plaintiff Elliott in any position due to his disability.

33. Defendant 3M terminated Plaintiff Elliott and continues to refuse Plaintiff Elliott employment, despite open positions, because of Plaintiff Elliott's disability.

34. 3M discriminated against Elliott on the basis of his disability in numerous ways, including, but not limited to, the following:

a. Defendant 3M refused to accommodate Plaintiff Elliott's disabilities by refusing to place him in one of several open positions/assignments, each of which could accommodate Plaintiff Elliott's disabilities, despite Plaintiff Elliott's repeated requests for Defendant 3M to do so;

6

b.    Defendant 3M denied Plaintiff Elliott promotional opportunities based on his disability, for example on one occasion where he applied for a promotion, he was told by Defendant 3M manager that: "You are not qualified to become a supervisor because you did not go to management school." Subsequently, Defendant 3M hired a non-disabled individual, without management school training, into the supervisor position which effectively denied Plaintiff Elliott promotional opportunities;

c.    In August 2007 Defendant 3M told Plaintiff Elliott, "After your work restrictions are lifted, call us back." Yet, in October 2007, after Plaintiff Elliott's work restrictions were lifted, Plaintiff Elliott called Defendant 3M, and Defendant 3M responded that there was no position for Plaintiff Elliott and that Defendant 3M was not hiring at the time. In fact, Defendant 3M had numerous open positions which Plaintiff Elliott was qualified and competent to fill;

d.    Defendant 3M terminated Elliott based on his disabilities; and

e.    3M otherwise treated Elliott differently than non-disabled employees (or employees it did not perceive as disabled) in the terms, conditions, and responsibilities of his employment.

35.    3M was fully aware of the nature and scope of the disability-based discrimination. 3M intended to discriminate against Elliott on the basis of his disabilities and the discrimination concerned the terms, responsibilities, and conditions of Elliott's employment with 3M.

36.    Defendant 3M took no action to stop, remediate, investigate or otherwise address or prevent the disability discrimination alleged herein.

37.    There was no legitimate non-discriminatory basis for 3M's termination of Elliott's employment.

38.    There is no legitimate non-discriminatory basis for 3M's refusal to reinstate Plaintiff Elliott.

39.    Plaintiff Elliott has suffered severe damages as a direct and proximate result of 3M's unlawful conduct as described herein, including, but not limited to, the following: loss of

employment, loss of wages, loss of benefits, emotional distress, humiliation, degradation, and other damages.

40.     All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

## COUNT I

### DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA 42 U.S.C.A. § 12101, *et. seq.*

41.     Plaintiff Elliott re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

42.     All conditions precedent to Count I have been satisfied.

43.     Plaintiff Elliott is a qualified individual with disabilities.

44.     The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to terminate a qualified individual with a disability because of his disability.

45.     Plaintiff Elliott is disabled in that he suffers from depression, anxiety, ulcers and severe migraine headaches.

46.     Plaintiff Elliott was diagnosed as having depression, anxiety, ulcers and migraine headaches while he was an employee of 3M.

47.     Plaintiff Elliott has a record of his above-described disabilities.

48.     3M was aware of Plaintiff Elliott's disabilities.

8

49.     At all relevant times herein, Plaintiff Elliott could perform all of the essential functions of his position with or without reasonable accommodations and his job performance, at all times, met or exceeded Defendant 3M's legitimate business expectations.

50.     In August 2007, Plaintiff informed Defendant 3M that his treating physician had prescribed new medications, to treat his disability, and because of the new medications he would have temporary driving restrictions as he adjusted to the new medications.  Plaintiff Elliott requested reasonable accommodations that would allow him to continue working.

51.     Plaintiff Elliott specifically suggested several reasonable accommodations, including:  a transfer to an open position, or job assignments that did not require driving.

52.     Defendant 3M wholly rejected all proposed reasonable accommodations.

53.     Defendant 3M was aware of Plaintiff's disabilities and need for reasonable accommodations, but ignored and refused its mandatory obligation under the ADA to engage in an interactive process with Plaintiff Elliott to identify and implement appropriate reasonable accommodations.

54.     3M refused to consult with Elliott to ascertain his precise job-related limitations and how a reasonable accommodation could overcome those limitations.

55.     3M refused to identify potential accommodations and assess their effectiveness in enabling Plaintiff Elliott to perform the essential functions of his job.

56.     3M refused to consider Plaintiff Elliott's preference and select and implement the accommodation most appropriate for both Elliott and 3M.

57.     Defendant 3M further refused to engage in good faith in an interactive process with Plaintiff Elliott and told Plaintiff Elliott to return to work when he had no restrictions.

9

58.     In October 2007, Plaintiff was cleared to return to work without restrictions.

59.     When Plaintiff Elliott advised Defendant 3M that he was cleared to return to work without restrictions, Defendant 3M told him that there was "no work for him at 3M."

60.     Defendant 3M terminated Plaintiff Elliott because of his disabilities.

61.     Defendant 3M replaced Plaintiff Elliott with a non-disabled employee.

62.     There was no legitimate discriminatory basis for Defendant 3M's refusal to accommodate Plaintiff Elliott's disability or its termination of Plaintiff Elliott.

63.     There is no legitimate discriminatory basis for Defendant 3M's continuing refusal to reinstate Plaintiff Elliott.

64.     Defendant 3M intended to discriminate against Elliott on the basis of his disabilities and the discrimination concerned the terms, responsibilities, and conditions of Elliott's employment with Defendant 3M.

65.      Defendant 3M's herein alleged actions were willful, malicious, in bad faith, outrageous, and extraordinary and violated the ADA.

66.     Defendant knowingly and intentionally violated federal law.

67.     3M's conduct, in violation of the ADA, was the direct and proximate cause of Elliott incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits, and severe emotional distress.

**WHEREFORE**, Plaintiff Elliott demands judgment against Defendant 3M as follows:

i.      Damages sufficient to compensate Plaintiff for his injuries;

ii.     Reinstatement or Front Pay;

iii.    Back Pay, inclusive of lost wages and any benefits;

10

iv.    Pre-judgment and post-judgment interest;

v.    Reasonable attorney's fees;

vi.    Costs of this action;

vii.    Emotional Distress Damages;

viii.    Punitive damages; and

ix.    Any and all other relief that this Honorable Court may deem just and
equitable.

## JURY DEMAND

### PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial
by jury on all questions of fact raised by the Complaint.


Dated: June 17, 2010                          /s/Robert M. Foote
                                              Robert M. Foote, Esq. (#03214325)
                                              Matthew Herman, Esq. (#06237297)
                                              Michael D. Wong, Esq. (#06291089)
                                              Foote Meyers Mielke & Flowers, LLC
                                              3 North Second Street
                                              Suite 300
                                              St. Charles, Illinois 60174
                                              Tel. No.: (630)232-6333

                                              Kathleen C. Chavez, Esq. (#6255735)
                                              Chavez Law Firm, P.C.
                                              3 North Second Street
                                              Suite 300
                                              St. Charles, Illinois 60174
                                              Tel. No.: (630) 232-4480


11

Peter L. Currie, Esq. (#06281711)
The Law Firm of Peter L. Currie, PC
536 Wing Lane
Saint Charles, IL 60174
Tel. No.: (630) 862-1130

***ATTORNEYS FOR PLAINTIFF***

## **VERIFICATION**

I, <u>MICHAEL ELLIOTT</u>, being first duly sworn on oath, deposes and states that I am the Plaintiff named in the foregoing Complaint and Demand for Jury Trial and that I have read the foregoing Complaint and Demand for Jury Trial by me, know the contents therefore and the same are accurate, true and correct to the best of my knowledge and belief.

MICHAEL ELLIOTT

Subscribed and sworn to before me
This **17** day of **June** 2010.

Notary Public

"OFFICIAL SEAL"
LIZETH ESQUIVEL
Notary Public, State of Illinois
My Commission Expires 02/01/2011

13